Filed 7/22/26  Perez v. City of Los Angeles CA2/4
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ERNESTO PEREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B334863<br><br>(Los Angeles County<br>  Super. Ct. No. 20STCV24449) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Patrick T. Madden, Judge.   Affirmed in part, reversed in part, and remanded with directions.

The Wallace Firm, Bradley S. Wallace; Matthew J. Kita for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Assistant City Attorney, Michael M. Walsh, Deputy City Attorney for Defendant and Respondent.

## INTRODUCTION

It was a September evening in 2019, and appellant Ernesto Perez was playing softball.  In the bottom of the first inning, Perez was in left field; with two outs and Perez's team leading 2-1, the batter hit a fly ball into foul territory down the third base line.  Perez pursued the ball, went into a slide, and made the catch.  Unfortunately, in the course of his slide, Perez hit one of a group of eight irrigation control boxes located on the field and suffered an injury to his knee — a tear in his patellar tendon that required repair surgery.

Perez sued the owner of the field, respondent City of Los Angeles (City), alleging that the irrigation control boxes were a dangerous condition of public property.  After trial, a jury awarded Perez $1,564,075.  However, the trial court granted the City's motions for judgment notwithstanding the verdict (JNOV) and new trial, and entered judgment in favor of the City.  Perez appeals those rulings.  For the reasons given below, we reverse in part and remand for new trial on the issue of noneconomic damages.

## FACTUAL AND PROCEDURAL BACKGROUND

There is no dispute about the immediate circumstances of Perez's injury.  The field on which he was playing had a series of eight off-white irrigation control boxes lined up in a row, in foul territory but still in the field of play, about halfway between the third base line and the fence.  Perez ran to field a fly ball in that area, made a sliding catch, and hit the edge of one of the boxes, which was protruding above the ground.  The edge sliced through the knee pad Perez was wearing, through the top of his kneecap, and into the patellar tendon.  The game ended immediately and Perez was taken to the

2

hospital in an ambulance. He underwent reparative surgery the next day.

I. *Trial*

Perez filed suit in June of 2020, alleging a single cause of action for dangerous condition of public property under Government Code section 835.[1] The City answered, and the case was assigned to a trial courtroom in July of 2023. On August 9, 2023, the court ordered a bifurcated trial; the first phase would be a bench trial in which the court would evaluate the validity and decide the legal effect of a release signed by Perez prior to the game. The second phase would be a jury trial on all remaining issues.

The first phase was held immediately, on August 9, 2023. On August 15, 2023, the court found the release valid, and ruled that plaintiff would be obliged to prove the City acted with gross negligence. The second phase of the trial then began. After jury selection, counsel made opening statements on August 21, 2023. Trial lasted six days, and the jury heard from 11 witnesses. With the basic facts of the injury uncontested, the trial centered on the design and maintenance of the irrigation control boxes, as well as Perez's damages.

A. *Design and Maintenance*

The director of the softball league, David Gadelha, said that while there was a "field monitor" who would check to see if the box covers were missing or cracked, the boxes themselves were the responsibility of the maintenance and irrigation crew, and the field monitor was not trained or instructed to evaluate whether the boxes were protruding above the ground. Ron Smeltzer, the umpire of the game in which Perez was injured, said he

---

[1]     All future statutory references are to the Government Code, unless otherwise designated.

was only expected to check the infield for issues, and would otherwise merely note concerns specifically raised by players.

Cathie Santo Domingo, the assistant general manager of planning, maintenance, and construction for the City's Department of Parks and Recreation, testified about the process by which the City designed and built the field. She explained that the facility should have been built in exact conformity with the plans, and that maintenance staff was likewise obliged to maintain the park in conformity with the plans. The principal grounds maintenance supervisor, Wayne Neal, testified that he had never seen the plans for the field and was not familiar with them. He said an irrigation box protruding above the ground would not have been considered unsafe.

Paola Jaramillo, the park maintenance supervisor who inspected the field most recently prior to the injury, testified that if she had seen any of the irrigation boxes protruding above the ground, she would have cordoned off the area until maintenance could bring extra soil to even the box out. Because of training she received while working on other fields, she believed the boxes were supposed to be flush with the ground. But she said she had not seen any issues when she conducted her inspections. She also said she was unfamiliar with the plans for the field, and claimed maintenance was not obliged to maintain the field in conformity with how it was planned and built.

Perez called an expert witness, Brad Avrit, who testified that safety standards required the boxes to be maintained flush with the level of the dirt; otherwise they create a tripping hazard or the risk of an event like what happened here, which Avrit described as an "impact edge hazard." Avrit testified that, accordingly, the plans for the field indicated the boxes were to be flush with the level of the dirt. He observed that the boxes were not flush with the dirt during his inspection of the field or in pictures admitted into

4

evidence, and that no inspection records had ever noted this as a problem. He therefore opined that the City was ignoring the issue.

The City called two experts. Mark Blanchette opined that the boxes were "conspicuous," suggesting Perez should have seen them and adjusted his play accordingly. John O'Donnell testified that Avrit was wrong about the field plans; O'Donnell said they called for the boxes to come one inch above the level of the dirt.

### B. *Damages*

Perez testified that he is an air conditioner repairman and installer. After the incident, he was in the hospital for three days, spent three to six months on crutches, had 12 physical therapy appointments, and was unable to work for eight months. He eventually became active again, but "not as active" as before. His knee continued to be painful and require attention if he was too active. At the time of trial, Perez had not seen a doctor for his knee in two years, had no future medical appointments scheduled, and required no prescriptions.

Perez called Nealesh Ghodadra as an expert orthopedic surgeon and life care planner. Ghodadra said Perez would need ongoing medical care, including physical therapy and lab work, as well as home exercise equipment. Ghodadra estimated the total cost at $502,988.65.

The City called Eric Millstein as an expert orthopedic surgeon. Millstein disagreed with Ghodadra's life care plan. He opined that none of the future concerns identified by Ghodadra applied to Perez.

## II. *Verdict*

On August 31, 2023, the jury returned its verdict. The jury found the

protruding boxes were a dangerous condition, they created a foreseeable risk of the injury Perez suffered, and the City had been grossly negligent. They found the City unreasonably increased and failed to minimize a risk that was not inherent to the game of softball. Further, they found the design plans for the field did not contribute to Perez's harm and Perez was not himself negligent. The jury awarded Perez $264,075 in future medical expenses, $400,000 in past noneconomic damages, and $900,000 in future noneconomic damages.

On September 27, 2023, the trial court entered judgment in favor of Perez.

### III.    *JNOV and New Trial*

In October 2023, the City timely filed motions for JNOV and new trial. In the motion for JNOV, the City argued that the evidence could support neither the finding of a dangerous condition nor the finding of gross negligence. In the motion for new trial, the City repeated its arguments from the motion for JNOV and added three more: that the release signed by Perez should have barred his claims entirely, that two questions in the jury verdict form were improperly crafted and inconsistent, and that the jury awarded excessive damages. Perez opposed the motions.

The court heard the motions on November 17, 2023, and ruled on November 20, 2023. The court granted the motion for JNOV without comment or explanation of its reasons. The court also granted the motion for new trial on two grounds: (1) it found the evidence insufficient to prove gross negligence and (2) it found the jury's award of non-economic damages

6

excessive.[2] The court did not comment on any other arguments raised by the motion.

The court immediately vacated its previous judgment and entered judgment for the City. Perez timely appealed. The City timely filed a protective cross-appeal from the prior judgment.

## DISCUSSION

After the appeals were filed, *Whitehead v. City of Oakland* (2025) 17 Cal.5th 735 (*Whitehead*) held that any release which excuses a public entity for liability resulting from a dangerous condition of public property is void. The City now concedes that, after *Whitehead*, Perez has no need to show gross negligence. Therefore, one of the two reasons given by the trial court for granting the City's motions, and the only one of the two that would support JNOV or a new trial on liability, no longer applies.

The City urges us to affirm the order granting JNOV on the alternate ground that the state of the irrigation control boxes did not constitute a dangerous condition. Further, the City claims in its cross-appeal that it successfully established a design immunity defense. The City also argues the order granting new trial on liability should be affirmed because the jury's responses to questions on the special verdict form were inconsistent, Perez made an improper argument to the jury, and the trial court refused to give a requested jury instruction. Finally, Perez maintains the order for new trial on damages should be reversed because the trial court improperly substituted its judgment for that of the jury. We find none of these contentions

---

[2] The court made no finding that the award for future medical expenses was excessive, and no specific argument on that point has been raised on appeal.

7

persuasive.

I.    *JNOV*

On appeal from an order granting or denying JNOV, we review the jury's verdict for substantial evidence.  (*Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 313—314.)  We resolve all conflicts and draw all inferences in favor of the verdict.  (*Ibid*.)

A.    *Dangerous Condition of Public Property*

Section 835 provides that "a public entity is liable for injury caused by a dangerous condition of its property."  To prevail on a dangerous condition claim, a plaintiff must show "[1] that the property was in a dangerous condition at the time of the injury, [2] that the injury was proximately caused by the dangerous condition, [3] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [4] that either: (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (§ 835.)

Here, the City argues the boxes were not in a dangerous condition and the kind of injury Perez suffered was not reasonably foreseeable.  But Perez submitted expert testimony that the boxes were not maintained to proper safety standards and posed a danger to players.  Gadelha, the league director, conceded that, as depicted in the photographs admitted into evidence, the boxes were a danger.  Neal, the principal grounds maintenance supervisor, testified similarly.  This is sufficient evidence to support the

8

jury's conclusion that the boxes were in a dangerous condition.

Further, the jury heard testimony from Smeltzer (the umpire) and Blanchette (the City's expert) that sliding was common to the game of softball. It is undisputed that the boxes were in the field of play. The jury was entitled to conclude that, if sliding on the field is common to the game, and there are obstacles on the field, the risk that a player would slide into those obstacles is foreseeable.[3]

The City suggests that sliding in the baseline was common in softball but sliding in the outfield was not. There is no evidence to support this conclusion and, as noted, it flies in the face of testimony from the City's own witnesses. The City also claims it was common practice to install irrigation control boxes in foul territory. That misses the point. The jury found no fault with the placement of the boxes; the hazard was that the boxes were sticking up out of the ground. Further, the City points out that it regularly inspected the boxes. Yet the City does not explain how regular inspections make this condition less dangerous, or the risk less foreseeable, if nothing is done about it.

The City urges that "the proof is in the pudding" — because Perez was the first person to be injured in this manner since the park opened six years earlier, the boxes were not in a dangerous condition and the risk was not foreseeable. We note that the City complains elsewhere about an argument (discussed below) that the boxes must have been dangerous because Perez was injured. This argument is the mirror image of that one. The City cites no authority for the proposition that a condition is not dangerous, or a risk is

---

[3]     Because substantial evidence supports a finding that the boxes were in a dangerous condition and posed a foreseeable risk to sliding players, we need not resolve any arguments about whether the boxes also presented a tripping hazard.

not foreseeable, simply because only one injury has occurred thus far. (See *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1346 [absence of other similar accidents is relevant but not dispositive].)

The City relies on *Fuller v. Department of Transportation* (2019) 38 Cal.App.5th 1034 (*Fuller*). That case is not on point. There, the plaintiff suffered a head-on collision while driving on State Route 1, when a car traveling in the opposite direction pulled into plaintiff's lane in an unsuccessful attempt to pass a tour bus. (*Id.* at pp. 1036—1037.) The plaintiff argued the road was dangerous because it had a blind spot, and because there was a viewpoint that made a portion of the road equivalent to an intersection. (*Id.* at p. 1037.) The jury found the road to be in a dangerous condition, but also found the risks to the plaintiff were not foreseeable. (*Id.* at pp. 1037—1038.) The court of appeal rejected plaintiff's argument that the verdicts were inconsistent, concluding the jury could have found the road was dangerous because of the viewpoint, but that cars turning on and off the road were not what led to the collision.

Here, Perez did not present the jury with a dangerous condition that was unrelated to his injury. And the jury found the risk to Perez was foreseeable. *Fuller* does not support setting aside the jury's verdict.

B.     *Design Immunity*

Section 830.6 immunizes a public entity from any liability "caused by the plan or design of a construction of . . . public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval." Design immunity is an affirmative defense, and to claim it, the City was required to show "a

10

causal relationship between the plan or design and the accident." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66.)

The jury found no causal relationship between the field plans and Perez's injury. The City claims the jury erred because Perez's counsel conceded the existence of a causal relationship in closing argument.[4] The City also claims the jury erred because Perez's complaint alleged the field's design caused his injury.[5] Neither point is dispositive, and the jury's findings are supported by substantial evidence.

While the allegations of a complaint may be evidence of causation for the purpose of establishing design immunity, other evidence may be considered as well. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550—552 [evaluating complaint against other evidence to see if there was a triable issue of fact].) And of course, the arguments of counsel are not evidence and do not constitute a stipulation. (*Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 796.)

One of the City's experts, O'Donnell, testified that having the irrigation control boxes in the field of play complied with industry standards. He explained that irrigation control boxes are commonly placed on the field in

---

[4] Perez's counsel observed that, "in the abstract," the design for the field caused the harm because there would have been no injury if the boxes had been placed outside the field of play. He then commented that "there are some nuanced arguments I could make to have you answer this question 'no' but . . . I don't think it is necessary."

[5] The cited portions of Perez's complaint are ambiguous. The complaint alleges that the dangerous condition of the boxes, "placed within the field of play as they were" caused the injury. It further alleges that the "installation and maintenance" of the boxes contributed to the injury "in that having the boxes protrude" in the field of play was dangerous. For the reasons given below, we need not attempt to resolve the ambiguity.

foul territory. The jury also heard testimony from Perez's expert, Avrit, that the field plans called for the boxes to be flush with the ground. Avrit said the boxes became hazardous because they were allowed to protrude above the ground, contrary to the plans.

The two City maintenance personnel who testified, Neal and Jaramillo, said they were unfamiliar with the field plans. Further, Jaramillo testified that maintenance had no obligation to follow the plans. The jury could rationally conclude from this evidence that the boxes were properly located in the field of play but were designed to be flush with the ground, and that the cause of Perez's injury was not the placement or design of the boxes but the City's failure to maintain them flush with the ground as the plans required.

III.    *New Trial*

When a motion for new trial is granted on the grounds of insufficiency of the evidence or excessive damages, we presume the new trial order is correct. (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 (*Lane*).) When ruling on a new trial motion, the trial court sits as an independent trier of fact, and therefore receives the same deference that would otherwise be given to the jury. (*Ibid.*) We reverse only if no reasonable trier of fact could have adopted the trial court's theory. (*Ibid.*)

A.    *Inconsistent Verdicts*

The City urges us to affirm the order granting new trial on the grounds that the jury's answers to questions three and four on the verdict form were inconsistent. Question three asked "[d]id the grossly negligent act(s) or omission(s) of [the City's] employees . . . cause the dangerous condition?" The jury answered "yes." Question four asked "[d]id [the City] have actual or

12

constructive notice of the dangerous condition for a sufficient time prior to the accident so that its failure to take measures to protect against it was grossly negligent?" The jury answered "no." How, the City asks, could its employees simultaneously have created the condition and have no notice of it?

The answer is that these questions target alternative elements of a dangerous condition claim. As quoted above, section 835 requires proof that either (a) the dangerous condition was directly created through the negligence or malfeasance of a City employee or (b) a City employee knew about the dangerous condition and failed to take precautions in a timely manner. As the California Supreme Court has explained, these alternative elements "obviously address two different types of cases . . . what distinguishes the two . . . is who created the dangerous condition." (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 836.) The first option covers conditions directly created by the City's employees, and the second covers conditions created by third parties. (*Ibid.*) The jury does not contradict itself by finding the condition was created by City employees rather than third parties.[6]

The verdict form asked the jury to make findings on these alternate theories disjunctively; if they found either alternative true, they were instructed to proceed to the remaining questions. If the City thought the form was misleading or confusing as applied to this case, they were obliged to object while the jury was still present. (*Behr v. Redmond* (2011) 193

---

[6] Another possibility is that the jury concluded the City's maintenance employees created the dangerous condition but were unaware of how dangerous it was. This would be supported by Neal and Jaramillo's testimony that they were unaware of the field designs and Neal's testimony that maintenance would not consider a protruding box to be dangerous.

13

Cal.App.4th 517, 529—530.) Because they failed to do so, any arguments related to the verdict form have been forfeited. (*Ibid.*)

###### B. *Jury Instructions*

Section 830.5, subdivision (a), provides that "the happening of the accident which results in the injury is not in and of itself evidence that public property was in a dangerous condition." In its cross-appeal, the City complains that Perez repeatedly suggested the mere fact of his injury was sufficient to prove the existence of a dangerous condition. The City briefly identifies a "series of questions" they found improper and then includes a lengthy quote from closing argument.

However, the remedy for improper questions and argument is a timely objection. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794—795.) The City does not claim that it objected to counsel's questions and the objections were improperly overruled. And it did not object to the relevant portions of Perez's closing argument. Therefore, this argument has been forfeited. (*Ibid.*)

The City argues that even if Perez's statements cannot support JNOV by themselves, they provide context for another alleged error: the court's failure to give the City's proposed special jury instruction number one, which quoted section 830.5, subdivision (a). The City claims that it "perceived" a strategy to ignore section 830.5 and therefore requested a special jury instruction to "prophylactically address the problem." This is not reflected in the record.[7]

---

[7] The reporter's transcript contains no discussion about this proposed special instruction. Nor does the record contain any briefing on the topic. The proposed instruction, along with several others, was provided to the court and the court made its ruling in chambers.

Nevertheless, even if we were to conclude the court erred in failing to give the requested instruction, the City has failed to meet its burden to show prejudice. (*McDoniel v. Kavry Management, LLC* (2025) 114 Cal.App.5th 949, 969.) The City's opening brief relies primarily on the fact that the jury's vote on the existence of a dangerous condition was 9-3. However, while a 9-3 vote may be considered as a factor in the analysis, it is not sufficient to show prejudice by itself. (See *Rodriguez v. Parivar* (2022) 83 Cal.App.5th 739, 758 [vote count was "one of two factors"]; *Weiner v. Fleischman* (1991) 54 Cal.3d 476, 490—491 [vote count was one of five factors].) The City develops no other arguments related to prejudice.[8]

### C.    *Damages*

The trial court found excessive the jury's award of $1.3 million in noneconomic damages. The court noted that Perez recovered normal range of motion in his knee within six months after the accident, returned to work within eight months, had no regular pain management prescription and had not sought medical treatment related to the injury for two years. The court also noted Perez's testimony that he had no present intention of having any future surgeries. Under these circumstances, a reasonable trier of fact could have concluded that an award of $1.3 million in noneconomic damages was excessive.

---

[8]    In the reply on its cross-appeal, the City laments that *Whitehead* was not decided sooner, as it would have "clarified" the issues at trial. But if anyone was prejudiced by the timing of *Whitehead* it was Perez, who was forced to prove gross negligence at trial, and then to appeal when the court concluded he failed to do so.

In his appellate briefing, Perez summarizes the evidence that supports the jury's verdict and argues generally that courts should defer to a jury's determination. However, the cases Perez cites for this proposition refer to the deference we owe a jury's verdict when a motion for new trial has been *denied*, and therefore both the jury and the trial judge have found the damages appropriate.[9] (See e.g. *Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 342—343 (*Phipps*).)

When a motion for new trial has been granted, as here, the deference we would ordinarily give to the jury is transferred to the new trial order. (*Lane, supra,* 22 Cal.4th at p. 412.) "The trial court sits much closer to the evidence than an appellate court . . . The trial court, therefore, is in the best position to assess the reliability of a jury's verdict and, to this end, the Legislature has granted trial courts broad discretion to order new trials. The only relevant limitation on this discretion is that the trial court must state its reasons for granting the new trial, and there must be substantial evidence in the record to support those reasons." (*Ibid.*)

We agree with Perez that the jury's verdict did not "shock the conscience," and the amount does not suggest "passion, prejudice, or corruption on the part of the jury." (*Phipps, supra,* 64 Cal.App.5th at pp. 342—353.) The verdict does not meet the standard that would require reversal had the trial court denied the motion for new trial. But Perez cannot meet his burden on appeal merely by showing that there would be evidence to

---

[9]    The lone exception, *Bigboy v. County of San Diego* (1984) 154 Cal.App.3d 397, proves the rule. There, the trial court granted a motion for new trial for reasons that had nothing to do with the injury suffered by the plaintiff. (*Id.* at pp. 406—408.) The court of appeal reversed, concluding that the trial court's ruling had no support and explaining that a judge should not substitute his judgment for that of a jury in the absence of evidence. (*Ibid.*)

support a different conclusion had the court reached it. (*Perry v. Stuart* (2025) 111 Cal.App.5th 472, 500.) He is obliged to show that no reasonable trier of fact could have adopted the trial court's position. (*Lane, supra,* 22 Cal.4th at p. 412.) Perez has made no attempt to do so,[10] and therefore has failed to meet his burden.

### IV.  *Conclusion*

The trial court granted JNOV and new trial on the grounds that Perez failed to prove gross negligence and the jury's award of noneconomic damages was excessive. The parties agree, in the wake of *Whitehead*, that Perez was not obliged to prove gross negligence. Because we are not persuaded that the court's grant of JNOV and new trial on liability can be sustained on any alternative grounds, the court's entry of JNOV must be reversed. However, because Perez failed to show the court erred in granting a new trial on the grounds of excessive damages, the City is entitled to a new trial on the issue of noneconomic damages.

---

[10]  At oral argument, Perez pointed out that the new trial order refers to the court's "many years of trying personal injury cases," and contended the court's general experience in other cases was an improper basis to find damages excessive here. In spite of any potential merit in that argument, it was not developed in the briefs and is therefore forfeited. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 279.)

17

## DISPOSITION

The order granting JNOV is reversed.  The trial court is directed to vacate the judgment entered on November 20, 2023.  The order granting new trial is affirmed in part.  The trial court is directed to conduct a new trial on the issue of noneconomic damages only.  Perez shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

We concur:


TAMZARIAN, J.


COGLIATI, J.*

---

* Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18